IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AQUILLA JESSIE,

                Plaintiff,
  v.

ALEX WOUTS, RANDALL R. HEPP,
MARK SCHOMISCH, BRIAN SCHUELER,
FOX LAKE CORRECTIONAL INSTITUTION, and
WISCONSIN DEPARTMENT OF CORRECTIONS,

                Defendants.

OPINION and ORDER

17-cv-840-jdp

---

Plaintiff Aquilla Jessie alleges that defendant Alex Wouts, a former correctional officer at Fox Lake Correctional Institution (FLCI), sexually assaulted Jessie while he was incarcerated. In a previous order, Dkt. 4, I dismissed the other defendants and allowed Jessie to proceed with an Eighth Amendment claim against Wouts. Wouts failed to respond to the complaint, although a summons and complaint were properly served. Dkt. 7. The clerk entered default. Dkt. 10.

Jessie has now moved for default judgment. Dkt. 12. I held a hearing on the motion on January 25, 2019. Jessie appeared in person and by counsel David Lang, James Gende, and Kevin Raasch. Wouts appeared in person and by counsel William Timothy Steinle. Counsel from the Wisconsin Department of Justice, Ann Peacock, made a special appearance for the State of Wisconsin as an interested party, but she did not participate in the hearing.

Wouts did not oppose the motion for default judgment as to liability. I find that the court has subject matter jurisdiction under 28 U.S.C. § 1331 because the case arises under the Eight Amendment to the Constitution; Wouts was properly served; Wouts did not answer or

otherwise respond to the complaint. Accordingly, I conclude that Jessie is entitled to default judgment.

Jessie presented evidence at the hearing of his damages, including the testimony of three witnesses: Brian Schuler, a captain with the Department of Corrections who investigated the Wouts sexual assault allegations; Amber Bohnert, Jessie's ex-wife; and Jessie himself. Jessie also submitted a damages brief with attachments, Dkt. 24, which I have considered. I have also considered Jessie's post-hearing submission concerning whether expert evidence is required. Dkt. 27. My consideration of the damages question will be guided by the Federal Civil Jury Instructions of the Seventh Circuit (as revised in 2017).

I have also considered the cases that Jessie has cited as exemplars of appropriate damage awards in civil cases involving sexual assaults. Dkt. 24-1. Some of these cases would provide guidance on the judicial *review* of damages awards. *See, e.g., Joan W. v. City of Chicago*, 771 F.2d 1020, 1025 (7th Cir. 1985). And one of the principles involved in such a review is whether the award is comparable to those in similar cases. *Id*. But I am making an initial determination of damages, which I must base on the evidence presented in this case. The specific damage awards in exemplar cases would not be presented to a jury, they are not binding on me, and I will not accord them significant weight.

I begin with compensatory damages. Jessie testified that he and Wouts had sexual contact 50–55 times between the spring and early winter of 2015. Jessie concedes that this is not an exact count, but an estimate. There is no corroborating evidence of the number of incidents. But I find Jessie's testimony credible and it was not significantly impeached. The estimate could be off, but the sheer number of individual incidents is not decisive in my decision on damages. I am satisfied that the sexual contact continued over a protracted period,

roughly from March to November 2015, and involved numerous incidents. Because Jessie has suffered injury as a result of the "commission of a sexual act," Jessie would be entitled to damages for mental or emotional injury without showing any physical injury. 42 U.S.C. § 1997e(e).

According to Jessie, the sexual encounters were substantially consensual at first. This is not irrelevant to the question of damages, but, as an inmate, Jessie was legally incapable of consenting to sexual contact with Wouts, a correctional sergeant. Each act was therefore a sexual assault under the law regardless of the absence of coercion. And Jessie's encounters with Wouts were never truly voluntary: he was a vulnerable young man who had been incarcerated from the age of 18. As the second-shift sergeant on Jessie's unit, Wouts held enormous authority over Jessie from the beginning.

As time went on, the sexual contact with Wouts was increasingly coercive. After Jessie told Wouts that he wanted to end the encounters, Wouts began threatening to interfere with Jessie's release and place him in segregation if he did not submit. This caused Jessie increasing fear, anxiety, and distress, which led to thoughts of self-harm and at least one suicide attempt.

Jessie's distress has continued after his release. Although Jessie has experienced previous trauma, and has some history of substance abuse, I find that Jessie's alcohol consumption and emotional stress has been severely exacerbated by Wouts's assaults. Jessie's psychological distress has interfered with his emotional connection with his ex-wife, with whom he is attempting to reconcile, and it has so far precluded sexual activity with her. Jessie's distress significantly increased when he learned that Wouts was HIV-positive. Although Jessie has

tested negative for HIV, and he is likely beyond the window period in which an HIV test might not be accurate,[1] Jessie's doubts about the accuracy of his test increase his anxiety.

I have no doubt that Jessie would benefit from ongoing mental health and substance abuse treatment. But Jessie has adduced no evidence of the cost of any such treatment, or of any other category of economic damages. Jessie has testified that he suffered physical harm as a consequence of Wouts's assaults—attempts at self-harm and fights in the prison—but he did not describe the extent of any physical injuries, and so I have no basis to assess damages for any physical injury. Thus, the only category of compensatory damages to which Jessie is entitled is the mental and emotional pain and suffering, including the loss of normal life activities, that he has experienced and is reasonably certain to experience in the future.

The assaults began in March 2015, and Jessie is still in acute distress, which means that he has so far endured nearly four years of emotional distress caused by Wouts's repeated sexual assaults. Defense counsel is correct that I have no expert evidence to establish that Jessie's emotional distress is permanent. But his distress is severe and it would be within the common sense of a lay fact-finder to find that it will not soon abate. So although I do not find that his emotional distress is permanent, I find, based on his emotional distress thus far and his testimony and presentation at the hearing, that he will likely continue to suffer from emotional distress for at least the near future.

I find that Jessie is entitled to compensatory damages of $1.5 million.

---

[1] *See* HIV Testing Overview at HIV.gov, a website run by the U.S. Department of Health and Human Services (available at https://www.hiv.gov/hiv-basics/hiv-testing/learn-about-hiv-testing/hiv-testing-overview).

I turn now to punitive damages, to which Jessie is entitled if Wouts's conduct was malicious or in reckless disregard of Jessie's rights. Wouts did not testify, which makes it more difficult to determine whether he acted with malice. But it is clear that he completely disregarded Jessie's rights. Wouts was convicted of five counts of second-degree sexual assault, in violation of Wis. Stat. § 940.225(2)(h), and one of the counts was for his assault of Jessie. Even setting aside the criminal violations, Wouts must have known that coercing and threatening Jessie into sex violated his civil rights as well.

Wouts's conduct is particularly awful, even within the awful category of correctional officers who exploit their authority over the inmates they are supposed to protect. The assaults went on for an extended period and involved multiple victims. He coerced Jessie into continued sexual contact by threats of retaliation. And he knowingly exposed his victims to a risk of HIV. Wouts will not be able to repeat his conduct, given his criminal convictions and sentence. Nevertheless, a strong message of deterrence should be sent to Wouts and any correctional officer who would so exploit his position of authority for his own gratification.

I have considered all factors in the jury instruction on punitive damages, and I award punitive damages of $3 million.

ORDER

IT IS ORDERED that:

1. The motion for default judgment by plaintiff Aquilla Jessie, Dkt. 12, is GRANTED.

2. Jessie is awarded compensatory damages of $1.5 million and punitive damages of $3 million.

3. The clerk shall enter final judgment and close the case.

Entered January 31, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge